FUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
WARREN DELUCA,

       Plaintiff,      **REPORT AND**
                **RECOMMENDATION**
 - against -
                CV 03-5142 (DLI) (JO)
ALLIED DOMECQ QUICK SERVICE
RESTAURANTS,
       Defendant.
----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge**:

  Defendant Allied Domecq Quick Service Restaurants (referred to herein as "Dunkin' Donuts" for reasons explained in the margin) seeks to preclude plaintiff Warren DeLuca ("DeLuca") from relying in any way, including for purposes of resisting a motion for summary judgment or eliciting testimony at any trial in this case, on a certain statement allegedly made by its counsel at a mediation session. Docket Entry ("DE") 58.[1] On May 4, 2005, the Honorable Dora L. Irizarry, United States District Judge, referred the motion *in limine* to me for a Report and Recommendation. I now make that report and, for the reasons set forth below, respectfully recommend that the court grant the motion in its entirety.

I. Background

  DeLuca was an employee of Dunkin' Donuts from April 2004 until his termination on June 5, 2002. DE 1 ("Complaint") ¶¶ 12, 22. The reason for his termination is a subject of

---

[1]  The defendant is a publicly treaded United Kingdom company. The claims at issue concern DeLuca's employment by Dunkin' Donuts, which is the defendant's wholly-owned subsidiary. *See* DE-3 (Allied's disclosure of corporate affiliations). On a related note, the official caption of this case renders the defendant's corporate name as "Allied Domeco Quick Service Restaurant." As "Domeco" is neither part of the defendant's name nor part of the caption of the Complaint as submitted, I direct the Clerk to replace "Domeco" with "Domecq" in the caption.

1

dispute in this lawsuit. Dunkin' Donuts asserts that DeLuca was terminated for violating its policies regarding conflicts of interest. DE 58 ("Memo.") at 2. DeLuca, who was 45 years old at the time, claims that it was the result of his employer's unlawful age-based discrimination. DE 60 ("Opp.") at 3.

On November 7, 2002, DeLuca filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that Dunkin' Donuts had, through its reassignment and termination of him, unlawfully discriminated against him because of his age and in retaliation for his complaints of discriminatory reassignment. *See* DE 58-4 ("EEOC Charge"). DeLuca subsequently filed an application to become a Dunkin' Donuts franchisee. His application was denied by Dunkin' Donuts General Counsel Stephen A. Horn. Opp. at 2; Memo. at 2.

Thereafter, on March 24, 2003, DeLuca and Dunkin' Donuts attended a voluntary EEOC mediation session. Pursuant to EEOC policy, the parties executed a standard Agreement to Mediate and a Confidentiality Agreement that specified the terms of the mediation. *See* DE 58-5 ("Mediation Agreement"); DE 58-6 ("Confidentiality Agreement"). The Confidentiality Agreement expressly provided that "all matters discussed during the mediation are confidential." *Id*. ¶ 2.

DeLuca asserts that the parties entered into a settlement agreement at the mediation but that Dunkin' Donuts later reneged. Opp. at 3. The Mediation Agreement, however, specifies that a settlement must be in writing, and DeLuca has submitted no evidence of such a written agreement. In any event, for purposes of the instant motion, it suffices to note that the mediation failed to end the parties' dispute. Instead, DeLuca commenced the instant lawsuit on October 9, 2003. In the Complaint he filed on that date, DeLuca alleged that in terminating his employment

and later denying his franchise application, Dunkin' Donuts violated both the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law 296. *See* Complaint ¶¶ 27-44.

In support of his claim of retaliation, DeLuca asserts that Dunkin' Donuts' Associate General Counsel Jack Laudermilk ("Laudermilk") made a statement at the EEOC mediation that "we're not in the process of giving out franchises to people that are suing us or made complaints." *See* Opp. Ex. D (deposition of Warren DeLuca dated September 29, 2004 ("DeLuca Dep.")) at 177 (the "statement"). That Laudermilk made either that precise statement or one substantially like it is not in serious dispute: although DeLuca concedes that he does not remember Laudermilk's "exact words," Laudermilk himself confirmed in his deposition testimony that he made some such statement, although he explained that he did so in the context of a free-flowing discussion and was not referring to the denial of DeLuca's franchise application or to any company policy. *See id.*; Opp. Ex. E (deposition of Jack Laudermilk dated December 1, 2004 ("Laudermilk Dep.")) at 18, 52-53.

It is this statement that forms the basis of the instant motion. At Laudermilk's deposition, Dunkin' Donuts objected to questioning about the statement on the grounds that it was privileged and inadmissible. Laudermilk Dep. at 54-55. Dunkin' Donuts now seeks to preclude DeLuca from making any use of the statement or of any testimony relating to it, either in opposing its motion for summary judgment or at trial. Memo. at 5.

II.     Discussion

Dunkin' Donuts cites six independent bases for the relief it seeks:

<u>First</u>, the statement is confidential pursuant to the terms of the Confidentiality and Mediation Agreements;

3

Second, it is a communication in furtherance of dispute resolution, and that pursuant to the Administrative Dispute Resolution Act ("ADRA"), DeLuca is therefore not only barred from seeking to use it in this litigation but has also acted unlawfully simply by disclosing the statement;

Third, the statement is privileged pursuant to Fed. R. Evid. 501;

Fourth, it is a settlement communication and therefore inadmissible pursuant to Fed. R. Evid. 408;

Fifth the statement is irrelevant as a matter of law and therefore inadmissible pursuant to Fed. R. Evid. 402; and

Sixth, the statement's probative value, if any, is outweighed by the risk of undue prejudice, rendering the statement inadmissible pursuant to Fed. R. Evid. 403.

To the somewhat limited extent that DeLuca counters these arguments, he assert that his proposed use of the statement falls within exceptions to the ADRA and Rule 408, that some of the remaining arguments offered in support of the motion are just wrong, and that the statement is otherwise admissible either as a non-hearsay admission or pursuant to the exception to the prohibition against hearsay that permits the use of declarations against penal interest. I address each proposed basis for exclusion in turn.

    A.    The Statement Is A Confidential Dispute Resolution Communication

        1.    DeLuca Agreed Not To Use The Statement

The statement was made in the course of a voluntary EEOC mediation. By virtue of the parties' agreements executed pursuant to EEOC policy and federal law that mediation proceeding was confidential. In order to encourage parties to be "forthcoming and candid," the EEOC requires that those participating in EEOC mediation agree to maintain the confidentiality of the proceedings. *See* Equal Opportunity Commission's Alternative Dispute Resolution Policy Statement, No. 915.002 ("EEOC ADR Policy Statement"), *available at*

http://www.eeoc.gov/policy/docs/adrstatement.html. That the parties were aware of the confidential nature of the proceedings is clearly established by their execution of the Mediation Agreement and the separate Confidentiality Agreement. The latter agreement plainly states that "all matters discussed during the mediation are confidential, unless otherwise discoverable, and cannot be used as evidence in any subsequent administrative or judicial proceeding."

Courts have consistently enforced parties' expectations of confidentiality during alternative dispute resolution ("ADR") proceedings by excluding improperly disclosed confidential statements and sanctioning attorneys for the improper disclosure of such statements. *See Lake Utopia Paper Ltd. v. Connelly Containers, Inc.,* 608 F.2d 928, 929-930 (2d Cir. 1979); *Fields-D'Arpino v. Restaurant Associates, Inc.*, 39 F. Supp.2d 412, 417-418 (S.D.N.Y. 1999). DeLuca offers no explanation as to why he should not be held to his prior agreement – indeed, his opposition rather conspicuously ignores it.

2. The ADRA Prohibits Use Of The Statement

The confidentiality of mediation and similar ADR proceedings conducted by federal agencies is governed by the ADRA, 5 U.S.C. §§ 571-574. The mediation here at issue was clearly such a proceeding. The EEOC's ADR Policy Statement dispels any doubt on that score: it expressly references the ADRA and notes its applicability to all EEOC ADR proceedings. Relevant statutory provisions preclude the voluntary or compelled disclosure of any communication during a covered proceeding unless certain exceptional circumstances are present and preclude the admission of improperly disclosed communications in any proceeding related to that issue or controversy with respect to which the communication was made. *See* 5 U.S.C. § 574(b)-(c). DeLuca does not contest that the ADRA applies in this case, but instead argues that the statement falls within one of the statute's exceptions.

5

DeLuca first argues that he is free to use the statement because it was "made public" withing the meaning of the relevant ADRA exception, 5 U.S.C. § 574 (b)(3). The "public" disclosure on which DeLuca relies is Laudermilk's discussion of his statement with Dunkin' Donuts' General Counsel Stephen A. Horn, as described by Horn at his own deposition. *See* Opp. at 7; Memo. Ex. F (deposition of Stephen A. Horn dated February 24, 2005) at 64. DeLuca is correct that the ADRA makes exception for the disclosure of an otherwise confidential dispute resolution communications that has been made public, but he is incorrect in asserting that the exception applies here. Although the statute does not identify the precise circumstances that suffice to make a communication "public," I can think of no reasonable definition of "public" that would extend to an otherwise private conversation between a company's General Counsel and its Associate General Counsel.

DeLuca's next argument for escaping the force of his own agreement and the ADRA's statutory command consists of three variations on the same public policy theme: namely, that admission of the statement would serve the public interest. Tracking the statutory language, DeLuca notes that precluding introduction of the statement would "represent a manifest injustice and could held [*sic*] establish a violation of the law; to wit, the ADEA." DeLuca conveniently leaves out the balancing test that the statute requires for admission on grounds that disclosure is necessary to prevent the harms that he correctly cites. The asserted injustice or violation of law must be:

> [O]f sufficient magnitude in the particular case to outweigh the integrity of dispute resolution proceedings in general by reducing the confidence of parties in future cases that their communications will remain confidential.

5 U.S.C. § 574(b)(5).

6

Lest the two statutory exceptions discussed above prove insufficient to his purpose, DeLuca goes one step further and asks the court to invent a new one. That is, he argues that even if the statement does not fall within one of the existing exceptions, I should infer the existence of an exception for situations in which "the admission in question is inexorably intertwined with Plaintiff's cause of action." Opp. at 7. DeLuca thus appears to argue that his retaliation claim will fail if Laudermilk's statement is excluded and that that fact alone is reason to allow it. I doubt that Congress had such an exception in mind when it drafted subsection (b)(5). There is an obvious and compelling policy interest in support of maintaining the confidentiality of ADR proceedings. To create an exception for those statements that are "intertwined" with a cause of action would be to create an exception that swallows the rules Congress took pains to create.

DeLuca next argues that even if the statement is a confidential communication, Laudermilk's deposition testimony is otherwise admissible under the ADRA as a statement of "fact or opinion." *See* 5 U.S.C. § 574(f). The pertinent statutory language tracks nearly verbatim a similar exception to the general prohibition under Rule 408 against the disclosure of "offers of compromise" and "statements made in compromise negotiations." *Compare* 5 U.S.C. § 574(f) ("Nothing in this section shall prevent the discovery or admissibility of any evidence that is otherwise discoverable, merely because the evidence was presented in the course of a dispute resolution proceeding.") *with* Fed. R. Evid. 408 ("This rule does not require the exclusion of any evidence otherwise discoverable merely because it was presented in the course of compromise negotiations."). "The "otherwise discoverable" exception to Rule 408 (and, I presume, to § 574(f) as well) addresses a concern not relevant here: namely, a disincentive to bring up specific facts or evidence during settlement discussions lest they thereby become

7

unavailable for use at trial. Such a regime – in which parties would have to choose between intelligent negotiation and effective litigation – would effectively make settlement or ADR impossible. *See* Fed. R. Evid. 408, Advisory Committee Notes, 1974 Enactment ("A party should not be able to immunize from admissibility documents otherwise discoverable merely by offering them in a compromise.") (citing Senate Report No. 93-1277). Even if the content of Laudermilk's statement contained a fact or opinion, this would not allow the introduction of the deposition testimony here at issue since DeLuca's counsel asked about the confidential statement itself rather than any facts or opinions related to the denial of DeLuca's application or the company's policy with regard to franchise applications.

\*    \*    \*    \*

In light of the plain language of the relevant Agreements to which DeLuca is a party and the equally plain language and import of the ADRA, and in the absence of any persuasive argument by DeLuca as to why those plain commands should be set aside, I conclude that Laudermilk's statement was a confidential dispute resolution communication the disclosure of which is prohibited by an enforceable agreement and by controlling statutory law. Accordingly, the statement is inadmissible and any deposition testimony concerning it or any other confidential mediation communication is likewise inadmissible. Moreover, because it would frustrate the obvious intent of both the parties' agreements and the ADRA to allow DeLuca to make any collateral use of the statement, such uses – including the use of the statement in opposition to the motion for summary judgment – should likewise be prohibited.

B.  The Statement Is Also Inadmissible Under the Federal Rules of Evidence

The foregoing is a sufficient basis to grant the instant motion. For the sake of a complete record, I will also address the arguments relating to the statement's admissibility under the Federal Rules of Evidence. In doing so, I note that such arguments would affect DeLuca's ability to make use of the statement as evidence not only at trial, but also for purposes of his opposition to the motion for summary judgment notwithstanding the fact that evidence is not, strictly speaking, offered or admitted in that context. *See In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1223, 1239 (E.D.N.Y. 1985) (citing Fed. R. Evid. 101; *Weit v. Continental Illinois National Bank and Trust Co.,* 641 F.2d 457, 467 n.38 (7th Cir.1981), *cert. denied*, 455 U.S. 988 (1982)), *aff'd* 818 F.2d 187 (2d Cir. 1987), *cert. denied*, 487 U.S. 1234 (1988).

Rule 408 prohibits the disclosure of "statements made in compromise negotiations." The EEOC mediation here at issue was indisputably a compromise negotiation: it was conducted for the sole purpose of resolving DeLuca's EEOC Charge through non-judicial means. Therefore, the statement is inadmissible for the purpose of establishing liability – or, more precisely, DeLuca may not use the statement to support the proposition that Dunkin' Donuts was retaliating against him for complaining to the EEOC when it denied his franchise application.

As he did with respect to the ADRA, DeLuca argues that the statement falls within an exception to Rule 408 because it was "more akin" to a statement of fact or opinion than an offer of compromise or settlement. The argument is no more persuasive here than it was above: the rule does not merely cover statements that are themselves offers of compromise or settlement, but extends further, for obvious reasons, to statements made in discussing such offers. And for

the same reason that the statement does not fall within the "otherwise discoverable" exception to the ADRA, it likewise is not "otherwise discoverable" in this context.

If the statement is rendered inadmissible by Rule 408, its admissibility under Rules 402 and 403, like Dunkin' Donuts' claim of privilege under Rule 501, is irrelevant. For purposes of completeness, however, I observe that none of the latter claims appears to have any merit: Laudermilk's statement may well be something that should be precluded in order to achieve the salutary goal of promoting settlement and ADR procedures, but a mediation privilege has not yet been recognized by the Second Circuit, and it cannot plausibly be argued that such an arguably revealing comment is irrelevant or unduly prejudicial. Accordingly, should the court reject my analysis with respect to the parties' agreements, the ADRA, and Rule 408, I recommend that it should deny Dunkin' Donuts' motion because its remaining arguments are unpersuasive.

III.    Recommendation

For the reasons set forth above, I respectfully recommend that the court grant Dunkin' Donuts' motion *in limine* to preclude DeLuca from making any use of certain evidence (including the testimony identified in Dunkin' Donuts' Proposed Order, DE 58-12, and Memo. Exs. D-G) in litigating the motion for summary judgment or at trial.

IV.    Objections

Any objection to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to me within ten days of service. Failure to file objections within this

period waives the right to appeal the District Court's Order. *See* 28 U.S.C. 636 (b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
February 24, 2006

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge